Filed 6/26/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re S.E., a Person Coming Under the Juvenile Court Law. | B244326 |
| | (Los Angeles County Super. Ct. No. CK75981) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. S.S. et al., Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephen Marpet, Commissioner. Reversed and remanded.

Karen J. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant S.S.

Andre F. F. Toscano, under appointment by the Court of Appeal, for Defendant and Appellant A.A.-E.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Peter Ferrera, Senior Deputy County Counsel, for Plaintiff and Respondent.

# INTRODUCTION

A.A.-E. (Father) and S.S. (Mother) appeal from an order of the juvenile court establishing guardianship of their son, S.E. Both parents contend that the Los Angeles County Department of Children and Family Services (DCFS) failed to comply with the inquiry and notice requirements of the federal Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and the analogous California statutes governing custody proceedings involving Indian children. (Welf. & Inst. Code, § 224 et seq.)[1] We conclude that the inquiry and notice conducted was not in full compliance with the requisites of the statute. We reverse for the limited purpose of full compliance with ICWA, as explained below.

# FACTUAL AND PROCEDURAL BACKGROUND

## I. Dependency Proceedings Culminating in Legal Guardianship Order

On April 16, 2008, DCFS received a referral alleging neglect of S.E. (born Oct. 2005) by Mother. The list of medical concerns for the boy included: failure to thrive/oral aversion, delayed speech, anemia, eczema, undescended testes, severe tooth decay, and asthma. Mother signed a voluntary family maintenance contract but, over the ensuing months, she repeatedly failed to adequately care for him and told social workers that her religious beliefs were not compatible with conventional medicine.

In January 2009, DCFS determined that S.E. was not getting adequate care for his problems and detained S.E. from Mother, placing him with the maternal grandparents. On January 21, DCFS filed a petition pursuant to section 300, subdivision (b), alleging that Mother had failed to protect S.E. Father filed a statement with the court declaring that he was S.E.'s parent.

On April 25, 2009, the parents abducted S.E. from the site of a monitored visit. The court issued a protective custody warrant for S.E. and arrest warrants for the parents.

---

[1] All undesignated section references are to the Welfare and Institutions Code.

On May 29, 2009, DCFS filed a second amended petition that added the allegation that the parents abducted S.E. during a monitored visit and endangered the child. On September 30, 2009, the court sustained the amended petition.

On February 20, 2011, Father was arrested in New Orleans and provided information as to the whereabouts of Mother and S.E. On March 4, Mother and S.E. were located in the New Orleans area and Mother was arrested. DCFS picked up S.E. and transported him back to Los Angeles, again placing him with the maternal grandparents.

In its disposition report, DCFS recommended that no reunification services be provided to the parents pursuant to section 361.5, subdivision (b)(15), which states that reunification services may be denied when a parent abducts the child from his or her placement and refuses to disclose the child's whereabouts or return the child to his or her placement or the social worker. DCFS noted that the physical problems S.E. had at the time of his initial detention were not addressed during the two years following his abduction. The child continued to be at risk for failure to thrive, as he had gained only five pounds in two years. DCFS informed the court that S.E. was in therapy to address issues related to past trauma and separation from his parents. The therapist told the social worker, "'There has been no progress in meeting the goals. He continues to be mute in all environments outside his home and immediate family.'" The child was extremely fearful, which the therapist attributed to mental health issues and lack of trust. DCFS reported that S.E.'s physical condition had improved since his placement with the maternal grandparents. It also noted that the parents had a pending criminal case related to the child's abduction. On September 8, 2011, at the request of DCFS, the court issued a three-year restraining order barring the parents from having any contact with the maternal grandparents or S.E.

On September 20, 2011, pursuant to section 361.5, subdivision (b)(15), the court denied the parents reunification services, finding it was not in S.E.'s best interest to order such services. The matter was set for a January 17, 2012 section 366.26 hearing.

3

DCFS's status review and section 366.26 reports indicated S.E. was thriving in his placement with the maternal grandparents. However, the grandparents wished to have legal guardianship of the child rather than adopt him.

On July 17, 2012, the court ordered that the child be placed under legal guardianship and terminated jurisdiction over the case.

## II.    ICWA Compliance

DCFS's initial detention report dated January 21, 2009, noted that Mother said she had native American Indian ancestry through the Cherokee tribe and that the child's maternal grandmother was half Cherokee. Maternal grandmother, C.W., confirmed she had Cherokee Indian heritage. She said her maternal grandfather was Cherokee, but she did not know if he was registered or of any specific tribal affiliation. The name of the maternal grandmother's grandfather (S.E.'s maternal great-great-grandfather) was not stated anywhere on the ICWA-030 form.

Father indicated on the parental notification of Indian status form that he might have Indian ancestry. At the detention hearing on January 21, 2009, Father said he had Sioux and Choctaw Indian heritage through his maternal grandmother or the child's paternal great-grandmother.

The court ordered DCFS to investigate the parents' claims and provide ICWA notice to the appropriate tribes. In April 2009, DCFS reported that notice under the ICWA was given to the Cherokee tribes, but the notice was erroneous and would have to be corrected.

DCFS filed an interim review report dated June 3, 2009, which included the ICWA notice provided to the Cherokee tribes and response letters from two tribes indicating S.E. was not an Indian child. At the hearing on June 3, 2009, the court found that ICWA did not apply to the case. Father's Indian ancestry was never investigated. Subsequent reports, including those generated after S.E. was located and returned to California, simply reiterated that ICWA did not apply.

4

## DISCUSSION

### I.  Applicable Law

Pursuant to 25 United States Code section 1912(a):  "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, [DCFS] shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention."  Section 224.2, subdivision (a)(1) similarly provides that notice to the tribe "shall be sent by registered or certified mail with return receipt requested."  "[B]oth the federal ICWA regulations (25 C.F.R. § 23.11(d)(3) (2008)) and section 224.2, subdivision (a) require the agency to provide all known information concerning the child's parents, grandparents and great-grandparents."  (*In re Cheyanne F.* (2008) 164 Cal.App.4th 571, 576.)  If known, names (maiden, married, former, and aliases), current and former addresses, birthdates, places of birth and death, tribal enrollment numbers, and any other information are to be provided.  (*Id.* at p. 575, fn. 3.)  Notice given by DCFS pursuant to the ICWA must contain enough information to permit the tribe to conduct a meaningful review of its records to determine the child's eligibility for membership.

"Deficiencies in an ICWA notice are generally prejudicial, but may be deemed harmless under some circumstances.  (*In re S.B.* (2005) 130 Cal.App.4th 1148, 1162; [*In re*] *Antoinette S.* [(2002)] 104 Cal.App.4th [1401,] 1411-1413.)"  (*In re Cheyanne F.*, *supra*, 164 Cal.App.4th at p. 577.)  Where notice has been received by the tribe, errors or omissions in the notice are reviewed under the harmless error standard.  (*Id*. at p. 576.)

We note that Mother and Father did not forfeit any deficiencies in the notice requirements by failing to raise them below because the notice provisions are designed in part to protect the potential tribe's interests.  (*In re Alice M.* (2008) 161 Cal.App.4th 1189; *In re Marinna J.* (2001) 90 Cal.App.4th 731, 739.)

## II. Analysis

### A. *Mother's Indian Heritage*

Mother contends that DCFS's failure to state the name of S.E.'s great-great-grandfather rendered the notice given inadequate. DCFS responds on appeal that it has no obligation to include information about ancestors as remote as great-great-grandparents in ICWA notices, as evidenced by the fact that there is no designated space for such ancestors on the ICWA notice forms promulgated by the Judicial Council of California.

Although we are sympathetic to DCFS's contention that Mother's objection will result in regrettable delay in the proceedings, we cannot say that the failure to thoroughly investigate the child's Indian heritage constitutes harmless error. The information which was omitted here pertained directly to the ancestor Mother and the maternal grandmother affirmatively claimed was Indian. Under these circumstances we cannot say that the omission was harmless and that providing the ancestor's name might not have produced different results concerning the child's Indian heritage. (Cf. *In re Antoinette S.*, *supra*, 104 Cal.App.4th 1401 [omission of information concerning non-Indian relatives is harmless error if the notice included all known information about the Indian parent and relatives].) Where the information was known, its inclusion was required regardless of the lack of a preprinted line on the Judicial Council form asking for it. Accordingly, we remand the matter to the juvenile court with directions to order DCFS to provide notice to the Cherokee tribes that includes the name and any available identifying information for S.E.'s maternal great-great-grandfather. If after proper notice the court finds the child is an Indian child, the court shall proceed in conformity with ICWA. If, after proper inquiry and notice, the court finds the child is not an Indian child, the order establishing guardianship as the permanent plan shall be reinstated.

### B. *Father's Indian Heritage*

Father contends we must reverse the guardianship order and remand the matter to the juvenile court with directions to ensure compliance with the ICWA notice provisions.

DCFS acknowledges error in its oversight in providing notice to the tribes specified by Father and that a limited remand is required, but contends reversal of the guardianship order is not necessary. We disagree.

As the court stated in *Nicole K. v. Superior Court* (2007) 146 Cal.App.4th 779 in disagreeing with the case relied upon by DCFS, *In re Brooke C.* (2005) 127 Cal.App.4th 377, "[e]ven assuming ICWA errors are not jurisdictional, we conclude the failure to give ICWA notice means that the orders in this case cannot stand." (*Nicole K.*, *supra*, at p. 785.) If notice to the Sioux and Choctaw tribes had revealed the child was an Indian child, the provisions of ICWA would have applied at the hearing establishing guardianship as the child's permanent plan. Because the juvenile court applied different standards and provisions other than those in the ICWA, its order must be vacated until ICWA notice is provided and the court determines what standard is applicable. (*Ibid.*) We understand that even if S.E. were found to be an Indian child, the relevant tribe might decide not to intervene in the matter or to intervene in only a limited way, such that the establishment of guardianship as the permanent plan would remain unaffected. However, if that proved to be the case, the juvenile court could readily reinstate the order of legal guardianship.

## DISPOSITION

The order establishing guardianship is reversed. The case is remanded to the juvenile court with directions to order DCFS to provide notice to the tribes as specified in this opinion, in accordance with ICWA. If after proper notice the court finds the child is an Indian child, the court shall proceed in conformity with ICWA. If, after proper inquiry

7

and notice, the court finds the child is not an Indian child, the order establishing guardianship as the permanent plan shall be reinstated.

**CERTIFIED FOR PUBLICATION**


SUZUKAWA, J.

We concur:


EPSTEIN, P. J.


WILLHITE, J.

8