Filed 10/28/22  In re T.W. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re T.W., a Person Coming Under the Juvenile Court Law. | B316647 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>TRACY B. et al.,<br><br>Defendant and Appellant. | Los Angeles County Super. Ct. No. 20CCJP02568A |

APPEAL from an order of the Superior Court of Los Angeles County.  Stephen C. Marpet, Judge.  Affirmed.

Linda J. Vogel, under appointment by the Court of Appeal, for Defendant and Appellant Tracy B.

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Appellant Troy W.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \*

Mother, Tracy B., and father, Troy W., appeal the juvenile court's order terminating their parental rights to their child, T.W. Parents' sole claim of error is that the Los Angeles County Department of Children and Family Services (Department) made an inadequate initial inquiry concerning T.W.'s ancestry for purposes of the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.). We affirm.

## BACKGROUND

### 1. Overview of Proceedings

This dependency proceeding began in May 2020, nearly two-and-a-half years ago, when T.W. was 18 months old. She was detained from mother for a litany of reasons following a report that mother, while intoxicated, threw T.W. onto a tile floor during an argument with a third party. The court placed T.W. in foster care.

The court denied reunification services to parents. As to mother, the court noted her history of drug use and unsuccessful participation in treatment programs. As to father, his incarceration was scheduled to continue for the duration of the statutory reunification period.

T.W.'s foster parents expressed interest in adopting T.W. The court terminated parental rights and ordered adoption by her foster parents as T.W.'s permanent plan.

### 2. Facts Relevant to ICWA Inquiry

The Department filed a form Indian child inquiry attachment (ICWA-010(A)) to the petition reflecting that it

2

questioned mother in May 2020 about possible Indian ancestry and she responded that T.W. has no known Indian ancestry.

On August 13, 2020, mother filed an unsigned form parental notification of Indian status (ICWA-20) with the box corresponding to "I have no Indian ancestry as far as I know" checked. At her arraignment hearing the same day, mother's counsel confirmed to the court that "[mother] informed [counsel] to [mother's] knowledge [mother] has no native American ancestry." Father was not present at the hearing because he was incarcerated and no arrangements had been made for him to appear. On the basis of mother's statement, the court found "it's not an ICWA case as I have no reason to know." This finding was reiterated in its minute order of the same date, together with an admonishment to the parents that they keep the Department, their attorneys, and the court aware of any new information relating to possible ICWA status.

Later in August 2020, the Department made a new report that "the mother denied having any ICWA ancestry, stating, 'No, not at all'" and that mother also "denied that the child's father had any ICWA ancestry stating, 'No he does not.'" At this time, the Department had still been unable to speak with father directly but had determined he was incarcerated at a state correctional facility in Soledad.

The Department eventually made contact with father, who made his first appearance telephonically from prison at the March 12, 2021 adjudication hearing. The court questioned father about heritage relevant to ICWA. Father's counsel responded for father: "Father's indicating he has no native American ancestry that he knows about." Father never submitted an ICWA-20. Nevertheless, based on the record the

3

court found "as to [T.W.], as to father, it's not an Indian case, pursuant to ICWA, as I have no reason to know."

The Department had limited contact with other family members during the course of its investigation. The record reflects that maternal grandmother also had substance abuse and mental health issues, which led mother to live with her aunt until she was 15. Despite thereafter living in foster care, mother maintains a good relationship with her aunt and is in contact with her mother. There is no record of contact between the Department and these women. Maternal grandfather is deceased.

Father's family history is undeveloped but the Department did try to contact some of his relatives. It interviewed T.W.'s paternal aunt in May 2020 and discussed possible placement with her, but the paternal aunt discontinued contact with the Department. The Department also attempted to communicate with paternal grandmother but without success.

We are directed to no evidence in the record that the Department ever asked any extended family members about T.W.'s possible Indian heritage.

## DISCUSSION

Congress enacted ICWA " 'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families.' " (*In re Isaiah W.* (2016) 1 Cal.5th 1, 8.) It is incumbent upon a state court administering a proceeding where child custody is at issue to inquire whether the subject child is an Indian child. The scope of the duty on the court, as well as certain participants in the proceeding, is defined by federal regulations and related state law. (See, e.g., 25 C.F.R.

4

§ 23.107 (2022); Welf. & Inst. Code, § 224.2; Cal. Rules of Court, rule 5.481.)

The duty of inquiry has three "phases." Parents claim error with the first. This phase—the "initial inquiry"—applies in every case. The initial inquiry requires the court and the Department to ask certain persons related to the proceedings about the child's possible Indian ancestry. (See Welf. & Inst. Code, § 224.2, subds. (a), (b), (c); *In re S.S.* (2022) 75 Cal.App.5th 575, 581; *In re D.F.* (2020) 55 Cal.App.5th 558, 566.) The state law initial inquiry requirements exceed those imposed by federal law, which merely require the court to "ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child" and instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child. (25 C.F.R. § 23.107(a) (2022).)

Where the "initial inquiry" gives "reason to believe" the child is an Indian child, but there is insufficient information to make a definitive determination, the second phase—"further inquiry"—comes into play. (Welf. & Inst. Code, § 224.2, subd. (e)(2).) Further inquiry requires more robust investigation into possible Indian ancestry. (See *ibid.*; *In re D.F.*, *supra*, 55 Cal.App.5th at p. 566.) If further inquiry gives the court a "reason to know" a child is an Indian child, the third phase is triggered. This phase requires that notice pursuant to ICWA be sent to the tribes to facilitate their participation in the proceedings. (§ 224.3, subd. (a)(1); *In re D.F.*, at p. 568.)

" ' "[W]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's

5

order.  [Citations.]  We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance." ' " (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401.)

The record here reflects that the Department failed in its initial inquiry obligation imposed by California law to ask "extended family members" whether T.W. is, or may be, an Indian child.  (Welf. & Inst. Code, § 224.2, subd. (b).) The Department only asked mother about Indian heritage and the court asked both parents about Indian heritage.  While these steps satisfied the lower federal initial inquiry requirements, in the absence of any evidence the Department complied with its section 224.2, subdivision (b), duty to inquire of extended family members with whom it had contact, the court's finding that ICWA does not apply is error.  (See *In re Darian R.* (2022) 75 Cal.App.5th 502, 509 [finding error where evidence showed Department had contact with maternal aunt and maternal grandfather but failed to inquire of them regarding Indian ancestry].)

However, because the court's error is one of state law, we can reverse only if the error was prejudicial.  (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 742 (*Benjamin M.*), citing Cal. Const., art. VI, § 13; see also *In re E.H.* (2018) 26 Cal.App.5th 1058, 1072 [explaining differential error analysis for federal versus state errors].)

Courts are divided on what showing of prejudice warrants reversal for initial inquiry errors.  "Some courts have addressed this problem by requiring an appellant who asserts a breach of the duty of inquiry to, at a minimum, make an offer of proof or

6

other affirmative assertion of Indian heritage on appeal." (*In re S.S.*, *supra,* 75 Cal.App.5th at pp. 581–582, citing cases.)  Others have excused such a showing, effectively treating failure to inquire as error per se.  (See, e.g., *In re Y.W.* (2021) 70 Cal.App.5th 542, 556; *In re J.C.* (2022) 77 Cal.App.5th 70, 80.)  The Fourth Appellate District in *Benjamin M.*, *supra,* 70 Cal.App.5th 735, took a third approach, concluding that "a court must reverse where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Id.* at p. 744.)  Our court recently took a fourth approach, concluding initial inquiry errors require reversal only when the record of proceedings in the court or a proffer of evidence made on appeal suggests a reason to believe that the child may be an Indian child.  (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 779, review granted Sept. 21, 2022, S275578.)

We have previously rejected the error per se line of cases. (*In re M.M.* (2022) 81 Cal.App.5th 61, 71, review granted Oct. 12, 2022, S276099.)  Under any of the other three lines of cases, the court's error here was harmless.

On the record before us, there is no reason to believe there is readily available information that is likely to bear meaningfully on whether T.W. has Indian ancestry.  Mother and father appeared and denied knowledge of any Indian ancestry.  There is no reason to believe that the one extended family member with whom DCFS communicated, T.W.'s paternal aunt, would have better information about father's Indian heritage than he did.  Indeed, the paternal aunt did not even know where

7

father was incarcerated. That she did not know where her brother was incarcerated suggests a lack of concern with familial ties. Moreover, the paternal aunt stopped communicating with the Department, casting doubt on whether she is accessible to the Department for any further questioning. The Department similarly attempted to communicate with paternal grandmother without success.

Likewise, there is no reason to believe that maternal grandmother or maternal aunt would have more information about mother's heritage than she does. Mother has been through repeated cases with the Department where the question of Indian heritage has been at issue.[1] She is in contact with her mother and aunt. Presumably, given the repeated significance of the issue to her parental rights, she would have asked them about Indian heritage. But in serial Department cases, no Indian heritage has been claimed.

Moreover, no one has even suggested there is any reason to believe T.W. might have Indian ancestry. Certainly, her parents have made no offer of proof that she is an Indian child. Instead,

---

[1] Pursuant to Evidence Code section 452, subdivision (d), we grant the Department's request for judicial notice of minute orders entered in prior dependency cases involving mother's other three children. The juvenile court took judicial notice of the cases in which the orders were entered, including the minute orders. Mother expressly stated that she does not oppose the request for judicial notice. Father did not file a reply or otherwise respond to the request.

The orders contain findings that mother "[is] not [a] member[] of any American Indian tribe" (in 2013) and that the court had no reason to know that a subject child "[wa]s an Indian Child, as defined under ICWA" (in 2015).

both parents represented on the record they have no information that T.W. may have Indian heritage. As such, this case is unlike *Benjamin M.* There, the father was entirely absent from the proceedings and no person from the father's side of the family had been asked about Indian ancestry. With information about ancestry on the father's side completely "missing," inquiry with a person sharing the father's ancestry "would likely have shed meaningful light on whether there [wa]s reason to believe Benjamin [wa]s an Indian child." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) No such facts are present here.

Given the absence of any evidence or claim that T.W. might have Indian ancestry, parents' "unvarnished contention that additional interviews of [relatives] would have meaningfully elucidated [T.W.'s] Indian ancestry" does not support a finding of prejudice. (*In re Darian R.*, *supra,* 75 Cal.App.5th at p. 510.)

Finally, we reject mother's suggestion that our disposition will inhibit, rather than advance, the interest of finality of T.W.'s placement by leaving the juvenile court's orders subject to collateral attack. As mother's own citation reflects, only deficiencies in compliance with federally imposed ICWA inquiry and notice requirements render an order subject to collateral attack. (*In re E.H.*, *supra*, 26 Cal.App.5th at p. 1072 [" '[V]igilance in ensuring strict compliance with federal ICWA notice requirements is necessary because a violation renders the dependency proceedings, including an adoption following termination of parental rights, vulnerable to collateral attack if the dependent child is, in fact, an Indian child' "].) There was no failure to comply with federal law in this case. The court satisfied its federal initial inquiry obligation by asking the parents about any heritage relevant to ICWA and directing

9

parents to share any related new information that may later come to light.  (See 25 C.F.R. § 23.107(a) (2022).)  Its error under state law does not create the risk of collateral attack.

## DISPOSITION

The Department's request for judicial notice is granted. The juvenile court's order terminating parental rights is affirmed.


GRIMES, Acting P. J.


I CONCUR:


HARUTUNIAN, J.*

---

\*      Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**WILEY, J., Dissenting.**

Justice Lavin urged the Supreme Court to review the issue at stake in this case. (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1015–1025 (dis. opn. of Lavin, J.).) The Supreme Court then granted review in *In re Dezi C.* on September 21, 2022, S275578.

I join with Justice Lavin's sound analysis. This is my 10th dissent on this strangely persistent issue. I am hopeful the Department soon may decide to comply with its statutory obligations and make this controversy moot.


WILEY, J.

1