Filed 6/23/21  In re Rayshon G. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re RAYSHON G., JR., a Person Coming Under the Juvenile Court Law. | B308043 (Los Angeles County Super. Ct. No. 20CCJP03785A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>NIKEL H.,<br><br>      Defendant and Appellant. | |

APPEAL from order of the Superior Court of Los Angeles County, Philip L. Soto, Judge.  Conditionally reversed, remanded with directions.

Elena S. Min, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel and Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Nikel H., the mother of now-four-year-old Rayshon G., Jr., appeals the juvenile court's jurisdiction findings and disposition order declaring Rayshon a dependent of the juvenile court and removing him from Nikel's custody. The sole issue on appeal is whether the juvenile court and the Los Angeles County Department of Children and Family Services (Department) complied with their duties of inquiry and notice under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) and related California law. We agree the Department failed to adequately investigate Nikel's claim of Indian ancestry and the juvenile court failed to ensure an appropriate inquiry had been conducted. Accordingly, we conditionally reverse the court's jurisdiction findings and disposition order and remand the matter to allow the Department and the juvenile court to rectify their errors and to take all other necessary corrective actions.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Dependency Proceedings*

In July 2020 the Department received a referral stating Nikel had been screaming and breaking dishes in her apartment, which was located within a transitional housing complex. When building staff entered the apartment, they found Rayshon hiding from his mother. After police and a social worker were called, Nikel was placed on a temporary psychiatric hold. The family

2

already had an open referral regarding Nikel's treatment of Rayshon, which included reports Nikel repeatedly talked to herself, screamed at Rayshon and threw things in the apartment. It was reported that on two occasions Nikel had fallen asleep with the bath water running, resulting in water flooding out of her apartment. During one of these incidents, Rayshon was found sitting on the wet floor of the apartment at 11:00 p.m.

On July 16, 2020 the Department filed a petition pursuant to Welfare and Institutions Code section 300, subdivision (b),[1] alleging Nikel had a history of mental and emotional problems, including a diagnosis of bipolar disorder, and had placed Rayshon in a detrimental and endangering home environment by twice flooding the home.[2] At the detention hearing on July 21, 2020 the court found a prima facie case for detaining Rayshon.[3]

The court sustained the petition as to Nikel at the jurisdiction/disposition hearing on August 18, 2020. Rayshon was declared a dependent of the juvenile court and suitably

---

[1] Statutory references are to this code unless otherwise stated.

[2] The petition also alleged Rayshon's alleged father, Rayshon G., Sr., had an extensive criminal history, including a conviction for voluntary manslaughter, that placed Rayshon at risk of serious physical harm. The juvenile court dismissed this allegation at the jurisdiction hearing upon a motion from the Department.

[3] Rayshon, Sr., was incarcerated at the time of the detention hearing and did not appear. Based on Nikel's representations to the juvenile court during the hearing, Rayshon, Sr., was found to be an alleged father and Anthony M. was found to be Rayshon's biological father. Anthony could not be located during the pendency of the matter.

placed under the supervision of the Department.  Nikel was provided family reunification services.

### 2.  *The ICWA Issues*

At the time of the detention hearing Nikel's attorney filed an unsigned Judicial Council form ICWA-020 on which the box was checked for the option, "I am or may be a member of, or eligible for membership in, a federally recognized Indian tribe." Inserted for the name of the tribe was "Blackfoot and Cherokee." The form also indicated Nikel's deceased grandfather Sie H. was a member of the Blackfoot tribe.

During the detention hearing the juvenile court noted Nikel believed she had "some connection with the Blackfoot and Cherokee tribes" and asked if she was registered with any tribe. Nikel replied she had "just recently asked to be registered" but did not state with which tribe.  She told the court she had not registered Rayshon with any tribe.  The court stated, "So right now, you're not registered and the child is not registered.  So this is not an ICWA case at the moment.  But you believe that you may be eligible through the Blackfoot and/or Cherokee tribe or tribes."  The court asked Nikel, "Is there anybody else in your family that is alive where you have their phone number and address so they can be contacted about your connection to the tribes?  Anybody else?"  Nikel replied, "No."  The court stated, "Well, we'll do the best we can about getting information about ICWA.  And the Department is ordered to notify tribes, bands, [the Bureau of Indian Affairs] and the Department of the Interior.  So we will check that out.  It could be an American Indian case."  The minute order for the hearing stated, "The Court is informed that there may be some Blackfoot and Cherokee Native American/Indian heritage in the mother's

4

background.  The Department of Children and Family Services is ordered to investigate said claim and notify all appropriate tribes."

The jurisdiction/disposition report, filed on August 6, 2020, stated, "Mother reported that she has Cherokee Indian and Blackfeet Indian heritage through [maternal great grandfather]." Attached to the report were copies of ICWA notices that had been mailed to the Bureau of Indian Affairs, the Secretary of the Interior, the Blackfeet Tribe of Montana, the Cherokee Nation of Oklahoma, the Eastern Band of Cherokee Indians and the United Keetoowah Band of Cherokee Indians.  The notices included the names, addresses and birth dates for Nikel's mother, father, grandmother, cousin and three brothers, all of whom live in southern California, as well as the date and place of birth of Nikel's deceased grandfather through whom Nikel claimed Indian ancestry.  The Department's report contained no indication of any effort to contact Nikel's family to develop additional information concerning Indian ancestry.  Neither the reporter's transcript nor the minute order for the jurisdiction/disposition hearing contains any mention of ICWA.

A status review report filed with the court on February 4, 2021 after the jurisdiction/disposition hearing attached responses from the Blackfeet Tribe of Montana, the Eastern Band of Cherokee Indians and the United Keetoowah Band of Cherokee Indians stating there was no evidence of Indian ancestry.[4]  There was no response attached from the Cherokee Nation.

---

[4]     We granted the Department's motion for judicial notice of the status review report, which attached the tribes' responses, as well as for minute orders dated February 5 and 16, 2021.  The

## DISCUSSION

### 1. *ICWA and the Duties of Inquiry and Notice*

"ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards a state court must follow before removing an Indian child from his or her family."[5] (*In re T.G.* (2020) 58 Cal.App.5th 275, 287; see 25 U.S.C. § 1902.) "ICWA and the controlling federal regulations (see 25 C.F.R. § 23 (2020)) simply set a floor for minimal procedural protections for Indian children, their families and their tribes; the statute authorizes states to provide 'a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under' ICWA." (*In re T.G.,* at pp. 287-288; see 25 U.S.C. § 1921.)

---

report contained no information evidencing any effort by the Department since the jurisdiction/disposition hearing to contact Nikel's family regarding possible Indian ancestry, including no indication the issue had been discussed with Nikel's aunt who had recently come forward seeking to have Rayshon placed with her. The minute order for the six-month status review hearing on February 16, 2021 stated, "ICWA issues remain open. DCFS to report on all relatives who may have contact information as to ICWA issues."

[5] "For purposes of ICWA, an 'Indian child' is an unmarried individual under age 18 who is either a member of a federally recognized Indian tribe or is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe." (*In re T.G., supra,* 58 Cal.App.5th at p. 287, fn. 10; see 25 U.S.C. § 1903(4) [definition of "'Indian child'"] & (8) [definition of "'Indian tribe'"]; see also Welf. & Inst. Code, § 224.1, subd. (a) [adopting federal definitions].)

In addition to significantly limiting state court actions concerning out-of-family placements for Indian children (see *In re T.G.,* at pp. 287-288), ICWA permits an Indian child's tribe to intervene in or, where appropriate, exercise jurisdiction over a child custody proceeding (see 25 U.S.C. § 1911(c); *In re Isaiah W.* (2016) 1 Cal.5th 1, 8).

To ensure Indian tribes have the opportunity to intervene in or exercise jurisdiction over a dependency proceeding, investigation of a family member's belief a child may have Indian ancestry must be undertaken and notice must be provided to the appropriate tribes.  The investigation requirement is found in section 224.2, subdivision (a), which imposes on the court and child protective services agencies "an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child." "That duty to inquire begins with initial contact (§ 224.2, subd. (a)) and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child." (*In re T.G., supra,* 58 Cal.App.5th at p. 290; see § 224.2, subds. (a)-(c).)  In addition, section 224.2, subdivision (e), imposes a further duty of inquiry regarding the possible Indian status of the child if, as it read at the time of the jurisdiction/disposition hearing in this case, "the court, social worker, or probation officer has reason to believe that an Indian child is involved in a proceeding."[6]  (See also Cal. Rules of Court,

---

[6]     Effective September 18, 2020, section 224.2, subdivision (e), was amended to include a definition of the phrase "reason to believe."  The statute now states, "If the court, social worker, or probation officer has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child, the court, social worker, or probation officer shall

rule 5.481(a)(4).)[7]  That further inquiry requires interviewing, "as soon as practicable," extended family members, contacting the Bureau of Indian Affairs and contacting "the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility."  (Former § 224.2, subd. (e)(1)-(3); see also current § 224.2, subd. (e) & (e)(2).)

The notice requirement under California law is found in section 224.3 and requires notice to the parent, legal guardian or Indian custodian and the Indian child's tribe if the child protective agency or court "knows or has reason to know . . . that an Indian child is involved" in the proceedings.  (Welf & Inst. Code, § 224.3, subd. (a); see also 25 U.S.C. § 1912(a); rule 5.481(c)(1).)  "There is reason to know a child involved in a proceeding is an Indian child under any of the following circumstances:  [¶]  (1)  A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child.  [¶]  (2)  The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village.  [¶]  (3)  Any participant in the proceeding,

---

make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.  [¶] (1)  There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe."  (§ 224.2, subd. (e).)

[7]     References to rules are to the California Rules of Court.

officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child.  [¶]  (4)  The child who is the subject of the proceeding gives the court reason to know that the child is an Indian child.  [¶]  (5)  The court is informed that the child is or has been a ward of a tribal court.  [¶]  (6)  The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (Welf. & Inst. Code, § 224.2, subd. (d); see also rule 5.481(b)(1); 25 C.F.R. § 23.107(c) (2020).)

2. *The Department Did Not Adequately Investigate Nikel's Claim of Indian Ancestry*

The ICWA-020 form filed by Nikel's counsel at the time of the detention hearing indicated Nikel's belief she had Cherokee and Blackfoot ancestry through her maternal grandfather, Sie H. That belief was confirmed by Nikel during the detention hearing; and she additionally informed the court she had recently requested to be registered with a tribe, although she did not specify which one.  These preliminary responses from Nikel unquestionably provided reason to believe an Indian child might be involved in the proceeding and triggered the Department's duty to make further inquiry pursuant to section 224.2, subdivision (e), and rule 5.481(a)(4).  (See *In re T.G., supra,* 58 Cal.App.5th at p. 292 [mother's statement she believed she had Indian ancestry and identification of her grandfather as having possible Indian ancestry were sufficient to require further inquiry]; *In re A.M.* (2020) 47 Cal.App.5th 303, 322 [mother's statement she had been told she may have Blackfeet or Cherokee ancestry and identifying her grandfather as having possible Indian ancestry sufficient to require further inquiry].)  However

9

there is no indication in the record the Department interviewed Nikel regarding her belief of Indian ancestry or made any attempt to reach any of the extended family members for whom the Department had contact information.

The Department argues it was relieved of its statutory duty to investigate Rayshon's possible Indian ancestry because Nikel had informed the juvenile court there were no living relatives who could provide additional information. It also contends Nikel's failure to identify any extended family members precludes her from arguing the Department breached its duty to investigate. These arguments reflect a troubling indifference to the importance of ICWA and the Department's responsibilities for its good faith implementation.

It is true, as the Department argues, that ICWA does not obligate the Department to "cast about for Indian connections" when there is no basis to do so. (*In re C.Y.* (2012) 208 Cal.App.4th 34, 42.) However, once the duty to investigate has been triggered, as it was here, "a social services agency has the obligation to make a meaningful effort to locate and interview extended family members to obtain whatever information they may have as to the child's possible Indian status." (*In re K.R.* (2018) 20 Cal.App.5th 701, 709.) "ICWA and state law place the duty with the child protective agency in the first instance, not the child or his or her parent, to determine whether additional information exists that may link a child with Indian ancestry to a federally recognized tribe." (*In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 787; accord, *In re T.G., supra,* 58 Cal.App.5th at p. 293 ["'[t]he burden of coming forward with information to determine whether an Indian child may be involved and ICWA notice required in a dependency proceeding does not rest

entirely—or even primarily—on the child and his or her family'"].)  In addition, the Department "must act upon information received from any source, not just the parent." (*In re K.R.*, at p. 706.)

Nikel's inability to provide contact information for her family members during the detention hearing did not relieve the Department of its affirmative duty to make a meaningful effort to locate such family members and interview them about possible Indian ancestry, let alone justify the Department's disregard of the juvenile court's order to investigate Rayshon's possible Indian ancestry.  The Department's argument that Nikel's lack of knowledge negated its obligations is particularly disingenuous since it was able to obtain biographical and contact information for seven maternal relatives by the time of the jurisdiction hearing, plus an eighth by the time of the six-month review hearing, including the daughter and widow of the relative through whom Indian ancestry was claimed.  Yet the Department failed to request information from these relatives regarding possible Indian ancestry.  Once the Department had located these individuals, it was required to make a meaningful effort to obtain information from them.  There is no excuse for its failure to do so.

The Department's breach of its duty of inquiry was compounded in this case by the juvenile court's failure to ensure compliance with ICWA's requirements or even with its own order at the detention hearing to investigate Nikel's claim.  Together, these errors require a conditional reversal of the jurisdiction findings and disposition order and a remand for an adequate investigation into Rayshon's possible Indian ancestry.  If a proper investigation develops additional information regarding possible

Indian ancestry, new or amended notices must be provided to the appropriate tribes.

### 3. *Any Deficiencies in the ICWA Notices Are Harmless*

Nikel identifies several errors and deficiencies in the ICWA notices sent by the Department.  First, she argues the copies of the notices filed with the juvenile court did not attach a copy of the petition as required by section 224.3, subdivision (a)(5)(D).  However, the notice itself states the petition is attached, and the certificate of mailing filed with the court specifies that a copy of the petition was mailed with the notice.  Nothing in the record suggests the petition was not included with each notice, and the three tribes that responded to the notice did not indicate failure to receive the petition.  In the absence of any evidence to the contrary, we presume the Department social worker included the petition in the notice as required and represented.  (See Evid. Code, § 664 ["[i]t is presumed that official duty has been regularly performed"].)

Nikel next argues the Department failed to file return receipts for the notices as required by section 224.3, subdivision (c), and the court failed to wait the requisite 10 days after receipt of notices by the tribes to hold the jurisdiction/disposition hearing as required by subdivision (d).  The Department concedes these errors but argues they are harmless because three tribes have since responded stating Rayshon is not an Indian child and there is still an opportunity for the fourth tribe to respond.  On remand, if the Department's investigation results in additional identifying information for the family or reveals potential membership in a tribe not yet notified, then the Department must send new or updated notices to those tribes.  If the investigation does not reveal any additional

information, then the initial notices will have been sufficient, and the Department will have an opportunity to file return receipts. Accordingly, any error is harmless.  (See *In re T.G.*, *supra*, 58 Cal.App.5th at p. 298 [failure to provide notice harmless where further inquiry to be done on remand]; *In re E.H.* (2018) 26 Cal.App.5th 1058, 1072 [violation of state law notice requirements are harmless unless appellant can show a reasonable probability that he or she would have enjoyed a more favorable result in the absence of the error]; see also *In re Christopher I.* (2003) 106 Cal.App.4th 533, 566 ["[s]ubstantial compliance with the notice requirements of ICWA is sufficient"].)

## DISPOSITION

The jurisdiction findings and disposition order are conditionally reversed.  On remand the juvenile court must promptly direct the Department to make a meaningful and thorough inquiry regarding Rayshon's possible Indian ancestry, including interviews with the maternal grandmother, extended family members and any other persons who may reasonably be expected to have information regarding Rayshon's tribal membership or eligibility for membership, and contact with any tribes that may have such information.

If the Department's further investigation develops any information not previously provided to the contacted tribes or results in reason to know of membership in any additional tribes, notice or amended notice in accordance with section 224.3 must be provided.  The Department shall thereafter notify the court of its actions and file certified mail return receipts for any ICWA notices sent, together with any responses received.  The court must determine, on the record, whether the ICWA inquiry and notice requirements have been satisfied and whether Rayshon is

13

an Indian child.  If the court finds he is an Indian child, it is to vacate all affected orders and conduct a new jurisdiction/disposition hearing, as well as all further proceedings, in compliance with ICWA and related California law.  If not, the court's original jurisdiction findings and disposition order may be reinstated.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.