Filed 3/29/22; Certified for Publication 4/7/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re A.R. et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>M.G.,<br><br>    Defendant and Appellant. | G060677<br><br>(Super. Ct. No. 21DP0090, 21DP0091)<br><br>O P I N I O N |

        Appeal from a judgment of the Superior Court of Orange County, Antony C. Ufland, Judge.  Reversed.

        Patricia K. Saucier, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, and Karen L. Christensen, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the minors.

\*          \*          \*

M.G. (Mother) appeals from the judgment terminating her parental rights to her 11-year-old daughter, A.R., and her 10-year-old son, C.R., and placing them in a permanent plan of adoption by their paternal grandparents. M.G. does not challenge the merits of the order; instead, she argues it must be reversed because the Orange County Social Services Agency (SSA) failed to conduct an inquiry into whether the children had Native American ancestry, as required by the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.; ICWA).

County counsel concedes SSA erred in failing to comply with ICWA but contends the judgment should nonetheless be affirmed because Mother failed to make any showing that her children may have Native American ancestry, and she has thus failed to demonstrate the error resulted in a manifest miscarriage of justice in this case.

We disagree. The interests protected by ICWA include the broad interest of Native American tribes in maintaining cultural connections with children of Native American ancestry. Those tribes have no standing to intervene in a dependency case unless Native American ancestry is first uncovered and established, and thus no way of protecting their tribal interests unless child welfare agencies comply with ICWA and then notify the appropriate tribe when the inquiry reveals Native American ancestry.

That is why the law requires that an ICWA inquiry be conducted in *every* case. The tribes have a compelling, legally protected interest in the inquiry itself. It is only by ensuring that the issue of Native American ancestry is addressed in every case that we can ensure the collective interests of the Native American tribes will be protected. Thus, the failure to conduct the inquiry in each case constitutes a miscarriage of justice.

What troubles us about county counsel's position, and by extension, SSA's, is that it seems to reflect a belief that the inquiry into Native American ancestry is not important. That cannot be the case. Until the inquiry is conducted, and the issue is put to rest, the interests of the Native American tribes have not been adequately protected, and the judgment in this case would remain vulnerable to a potential collateral attack.

The required inquiry here could have been conducted in significantly less time than it took to defend this appeal. In the interest of limiting any further delay, we conditionally reverse and remand the case with instructions that SSA conduct the inquiry immediately, and that the trial court likewise resolve the issue as soon as possible. If the initial inquiry reveals no Native American heritage, then the judgment shall be reinstated forthwith. (See *In re Francisco W*. (2006) 139 Cal.App.4th 695) (*Francisco W.* [applying similar rule in cases where improper notice was given to tribes].)

**FACTS**

This dependency case arose out of tragic circumstances. In January 2021, Mother stabbed the children's father to death during an altercation in their bedroom, while the children were also at home in their own bedroom. The children heard the parents arguing earlier; they heard a '"commotion"' and their father '"crying and sounding like he was in pain."' The children banged on the door for about 15 minutes before the screaming stopped. They both believed Mother "was killing [their father.]"

Mother was taken into custody by police and later charged with murder. The children were taken into protective custody; SSA later filed a petition alleging the court should take jurisdiction over the children under Welfare and Institutions Code section 300, subdivisions (b)(1), (c) and (g).[1] SSA did not initially interview Mother on

---

[1] All further statutory references are to this code, unless otherwise indicated.

3

the advice of law enforcement officials, and Mother later invoked her Fifth Amendment right not to speak.

The children were placed in the custody of their paternal grandparents, where they remain. Mother submitted on the petition, which was sustained in April 2021. The court then bypassed Mother for reunification services and scheduled a section 366.26 hearing to determine a permanent plan for the children.

In September 2021, the court found that the children's placement was necessary and appropriate, that it was likely the children would be adopted, and terminated Mother's parental rights.

It is undisputed that at no point during the proceedings did either SSA or the court conduct any inquiry into whether the children had Native American heritage.

## DISCUSSION

1. *ICWA*

"ICWA is a federal law giving Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation. [Citations.] Congress enacted ICWA to further the federal policy '"that, where possible, an Indian child should remain in the Indian community . . . ."'" (*In re W.B.* (2012) 55 Cal.4th 30, 48, fn. omitted.)

ICWA provides that "[i]n any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912(a).) As explained by our Supreme Court, "[t]his notice requirement, which is also codified in California law [citation], enables a tribe to determine whether the child is an Indian child and, if so, whether to intervene in or

exercise jurisdiction over the proceeding. No foster care placement or termination of parental rights proceeding may be held until at least 10 days after the tribe receives the required notice." (*In re Isaiah W.* (2016) 1 Cal.5th 1, 5 (*Isaiah W.*).)

"ICWA notice ensures that an Indian tribe is aware of its right to intervene in or, where appropriate, exercise jurisdiction over a child custody proceeding involving an Indian child." (*Isaiah W., supra*, 1 Cal.5th at p. 8.)

In California, section 224.2 "codifies and elaborates on ICWA's requirements of notice to a child's parents or legal guardian, Indian custodian, and Indian tribe, and to the [Bureau of Indian Affairs]." (*Isaiah W., supra,* 1 Cal.5th at p. 9.)

"Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case. These requirements are sometimes collectively referred to as the duty of initial inquiry. [Citation.] [¶] The duty of initial inquiry arises, in part, from federal regulations under ICWA stating that '[s]tate courts must ask each participant in an . . . involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child' and that '[s]tate courts must instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child.'" (*In re Benjamin M*. (2021) 70 Cal.App.5th 735, 741 (*Benjamin M.*).)

"State law, however, more broadly imposes on social services agencies and juvenile courts (but not parents) an 'affirmative and continuing duty to inquire' whether a child in the dependency proceeding 'is or may be an Indian child.' (§ 224.2, subd. (a).) When the agency takes the child into temporary custody, its duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.' (§ 224.2, subd. (b).) State law also expressly requires the juvenile court to ask participants who appear before

the court about the child's potential Indian status. (§ 224.2, subd. (c).)" (*Benjamin M., supra*, 70 Cal.App.5th at pp. 741-742; see *Isaiah W., supra,* 1 Cal.5th at p. 9.)

As these authorities make clear, the primary parties protected under ICWA are the Native American tribes, whose right to intervene in an appropriate case will likely never be discovered absent the statutorily required inquiry and notice procedures. Thus, the law allows a parent to raise failure to comply with ICWA on appeal, even if the issue was not raised in the trial court, because "[t]he parent is in effect acting as a surrogate for the tribe in raising compliance issues on appeal." (*In re K.R.* (2018) 20 Cal.App.5th 701, 708.)

If ICWA is not complied with, "'the dependency proceedings, including an adoption following termination of parental rights, [are] vulnerable to collateral attack if the dependent child is, in fact, an Indian child.'" (*In re E.H.* (2018) 26 Cal.App.5th 1058, 1072; see 25 U.S.C. § 1914.)

2.   *The Consequence of Failing to Inquire in this Case*

SSA and the trial court erred by not conducting the required ICWA inquiry. The sole issue before us is whether the error is reversible.

The published cases seem to fall into three groups: the first concludes that the conceded error warrants reversal in every case because the duty to inquire was mandatory and unconditional. (See, e.g., *In re Y.W.* (2021) 70 Cal.App.5th 542, 556 (*Y.W.*); *In re K.R.*, *supra*, 20 Cal.App.5th 701.)

In *Y.W.* the court rejected the notion that a parent should have to make a factual showing of prejudice, pointing out that "the point of the statutory requirement that the social worker ask all relevant individuals whether a child is or may be an Indian

6

child:  to obtain information the parent may not have."[2]  (*Y.W., supra,* 70 Cal.App.5th  at p. 556.)

The second group concludes that the error does not warrant reversal unless a "miscarriage of justice" is demonstrated to have occurred as a consequence of the failure to inquire about Native American heritage.   (See Cal. Const., art. VI, § 13 ["No judgment shall be set aside . . .  unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"].)  These cases would allow a parent to make an offer of proof on appeal, showing there is reason to believe Native American heritage exists.  (See, e.g., *In re A.C.* (2021) 65 Cal.App.5th 1060; *In re Noreen G.* (2010) 181 Cal.App.4th 1359, 1388; *In re N.E.* (2008) 160 Cal.App.4th 766, 770 (this court); *In re Rebecca R.* (2006) 143 Cal.App.4th 1426.  In the absence of such an affirmative showing, this line of cases concludes the judgment should be affirmed.

The third option is the self-described "middle ground" approach taken in *Benjamin M.*, *supra,* 70 Cal.App.5th 735, in which the appellate court would determine, on a case by case basis, whether the record reflects there are known relatives identified by the child welfare agency, who appear to have been able to shed light on the issue of Native American heritage.  *Benjamin M.* held that the failure to inquire would be reversible error if "there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child."  (*Id.* at p. 744.)

---

[2]      Although *Y.W.* goes on to state that putting the appellate burden on a parent "makes it impossible for [the parent] to demonstrate prejudice" (*Y.W., supra,* 70 Cal.App.5th at p. 556), we believe the assertion goes too far.  In many cases, it would be possible for a parent to uncover at least some evidence of Native American heritage, if it exists.  Additionally, the scope of a parent's offer of proof might include evidence that the parent's effort to uncover heritage was stymied for some reason.  But as the statutes place the burden on the child welfare agency, not the parent, we presume the agency would be better suited, both in terms of experience and resources, to conduct the inquiry.

Thus, the *Benjamin M.* court found the failure to inquire about Native American heritage in that case was reversible error because the agency "failed its duty of inquiry by not asking 'extended family members' [citation] such as Father's brother and sister-in-law whether Benjamin has Indian ancestry on his paternal side. . . . [T]he missing information here was readily obtainable, as CFS had spoken to Father's sister-in-law and Father's brother and has the address (through Mother) for either that brother or another one. Moreover, the information those relatives could have given would likely have shed meaningful light on whether there is reason to believe Benjamin is an Indian child." (*Benjamin M., supra*, 70 Cal.App.5th at p. 744.)

As the court in *Benjamin M.* points out, there are problems with the first two approaches. The rule establishing automatic reversal without any reason to believe Native American heritage exists would potentially reward parental gamesmanship and undermine the policy favoring prompt resolution of juvenile dependency cases. It also potentially runs afoul of the constitutional requirement that judgments can only be reversed on appeal in cases where a manifest miscarriage of justice has been shown. (Cal. Const., art. VI, § 13.) And the rule allowing reversal only in cases where the parent makes at least an offer of proof regarding Native American heritage amounts to a rule that effectively shifts the agency's unconditional statutory burden to the parents in cases where the agency has failed to fulfill it.

Opting for a middle ground is always tempting. But the *Benjamin M.* analysis fails to address the constitutional requirement that a "miscarriage of justice" must be shown. It rests instead on the distinction between cases where it appears an inquiry could have been easily conducted—because the record demonstrates relatives were known and readily accessible—and cases where the record does not reflect the inquiry would have been so easy. But neither the agency's obligation to make the ICWA inquiry, nor the constitutional "manifest miscarriage of justice" standard are dependent upon the ease of compliance.

In our view, the correct approach is to focus on the wider interest at play—i.e., the federal and state public policy of ensuring that potential Native American heritage is considered, and thus inquired about, in *every* dependency case.

Indeed, as persuasively noted by the court in *In re K.R.*, *supra*, 20 Cal.App.5th at p. 708, a rule requiring reversal in all cases where ICWA requirements have been ignored is consistent with the recognition that parents are effectively acting as "surrogate[s]" for the interests of Native American tribes when raising this issue on appeal. And as that court points out, "[a]ppellate review of procedures and rulings that are preserved for review irrespective of any action or inaction on the part of the parent should not be derailed simply because the parent is unable to produce an adequate record." (*Ibid.*)

Any other rule would potentially make enforcement of the tribes' rights dependent on the quality of the parents' effort on appeal. That would be inconsistent with the statutory schemes which place that responsibility squarely on the courts and child welfare agencies. Stated plainly, it is the obligation of the government, not the parents in individual cases, to ensure the tribes' interests are considered and protected.

The duty to inquire in *every* case is the key to that protection. Without it, the tribes effectively have no mechanism for ascertaining whether they have an interest in the care and well-being of any specific child. To ignore the obligation to conduct an ICWA inquiry in individual cases would undermine ICWA policy in general.

3. *The Need for Finality and Permanency*

Of course, a prompt resolution of their cases based on the children's need for permanency remains a significant consideration in these juvenile dependency cases (see § 352, subd. (a)(1); *In re Marilyn H.* (1993) 5 Cal.4th 295, 310 ["lengthy and unnecessary delay in providing permanency for children [is] the very evil the Legislature intended to correct"]; *Francisco W., supra*, 139 Cal.App.4th at p.706.); we do not ignore it here. These cases cannot be allowed to languish without a good reason. Reversing the

9

judgment, even "conditionally," means finality of the judgment is delayed.  If Mother has brought this appeal for the purposes of achieving delay, as county counsel suggests, we condemn such tactics.

There are nonetheless two reasons why that consideration does not materially alter our analysis.  First, the delay need not be a significant one.  We hope that establishing a clear rule that requires reversal in all cases where no required ICWA inquiry has been conducted will prompt SSA to conduct such an inquiry at its earliest opportunity to do so.

If any party should be expected to provide this court with a meaningful offer of proof on the point, it is the child services agency that is statutorily required to conduct the inquiry at issue.  If SSA had fulfilled its statutory obligation in this case, even belatedly after Mother raised the issue, the inquiry could likely have been completed— and the issue *properly* laid to rest—before this appeal was even fully briefed.

And second, the failure to conduct any inquiry at all—as county counsel advocates here—leaves a case vulnerable to collateral attack in the event Native American heritage is later discovered.  While the likelihood of such an attack may be minimal, in any one case, the very possibility would be devastating to the concepts of finality and permanency.

## DISPOSITION

The judgment is conditionally reversed, and the case is remanded with instructions—to both SSA and the dependency court—to conduct an initial ICWA inquiry as soon as possible.  If that inquiry reveals evidence of Native American heritage,

10

then the additional ICWA requirements must be complied with.  If it does not, then the judgment shall be reinstated forthwith.


GOETHALS, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


MARKS, J.*


  *Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 4/7/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re A.R. et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, | G060677 |
| Plaintiff and Respondent, | (Super. Ct. No. 21DP0090, 21DP0091) |
| v. | O R D E R |
| M.G., | |
| Defendant and Appellant. | |

On the court's own motion, the above-entitled unpublished opinion, filed on March 29, 2022, is certified for publication in the Official Reports. The opinion meets the standards set forth in California Rules of Court, rule 8.1105(c).

The opinion is ordered published in the Official Reports.



GOETHALS, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


MARKS, J.*


  *Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

2